UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 14-CV-20236-WILLIAMS

BENYAM GULILAT and
EUPHROSYNE PARKER,

      Plaintiffs,

vs.

DELTA AIR LINES, INC.,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendant's motion to dismiss Plaintiffs' Amended Complaint [D.E. 17]. The Court has also considered Plaintiffs' response [D.E. 18] and Defendant's reply [D.E. 19]. For the reasons discussed below, Defendant's motion to dismiss is **GRANTED**.

### I. Background

Plaintiffs allege the following facts, which the Court accepts as true for purposes of this motion. *See Speaker v. U.S. Dept. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). On or about May 25, 2012[1], Plaintiffs were passengers on a flight operated by Delta originating in New York City and heading to Accra, Ghana [D.E. 11 ¶¶ 6, 8]. After taking their assigned seats on board the aircraft, Plaintiffs requested that their seats be changed to upgraded "comfort seats." *Id.* at ¶¶ 15-16. Delta employees declined to move the Plaintiffs

---

[1] Though the Amended Complaint alleges that the flight departed on May 24, 2012 [D.E.11 ¶ 8], the boarding passes attached to the Amended Complaint indicate that the flight departed on May 25, 2012 [D.E. 11-1 at 3]. If there is a conflict between the complaint and supporting documents, the information in the supporting documents controls. *See, e.g., Dent v. Giaimo*, 606 F.Supp.2d 1357, 1358-59 (S.D. Fla. 2009).

despite their having expressed a willingness to pay extra for the better seats. *Id.* at ¶¶ 16-17.

Plaintiffs allege that they later overheard a Delta employee complaining about the "low class" people traveling on the New York – Accra route. *Id.* at ¶ 18. Based on this statement, Plaintiffs allege that their request for a seat upgrade was denied because of racial discrimination. *Id.* Plaintiffs assert they subsequently observed Delta flight attendants grant the upgrade they had been denied to "Caucasian" passengers. *Id.* at ¶ 19. At this point, it appears, the dispute grew more heated. Plaintiffs "continued to protest the unfair treatment they believe they had received," while Delta employees characterized Plaintiffs as "hostile" and "disruptive." *Id.* at ¶ 20.

Plaintiffs allege that, while en route to Accra, Delta employees used a ruse to obtain Plaintiffs' passports, for the purpose of "restrict[ing] Plaintiffs' freedom of movement" upon arrival. *Id.* at ¶ 23. Once in Ghana, Plaintiffs were "immediately seized by Ghana police" and "detained several hours against their will." *Id.* at ¶ 29. Several Delta employees complained to the Ghana police that Plaintiff Gulilat "had been very violent and insulting the crew members" during the flight [D.E. 11-1 at 5; D.E. 1 at 16-20].[2] Plaintiffs allege that the accusations made against Gulilat were false [D.E. 11 ¶ 27].

Plaintiffs allege that they were "physically restrained" as a result of this incident, which has caused them to "fear for their safety," and "suffer severe emotional distress."

---

[2] In their Amended Complaint, Plaintiffs refer to written statements made by Delta employees to Ghana authorities contained in "Exhibit C" [D.E. 11 ¶ 30]. However, no "Exhibit C" is attached to the Amended Complaint. Gulilat's original Complaint does contain an "Exhibit C" which does include written statements Delta employees made to Ghana police regarding Gulilat's conduct during the flight [D.E. 1 at 16-20].

*Id.* at ¶ 32. This emotional distress has "manifested itself in subsequent physical ailments including nightmares, a heightened fear of flying, and generalized anxiety." *Id.*

Plaintiff Benyam Gulilat originally filed this action on January 21, 2014, bringing claims of breach of contract, discrimination, negligent infliction of emotional distress and negligence [D.E. 1]. An Amended Complaint was subsequently filed on May 13, 2014, adding Plaintiff Euphrosyne Parker as a party [D.E. 11]. The Amended Complaint dropped the original claims and includes only a single claim for bodily injury during international air travel under Article 17 of the Convention for the Unification of Certain Rules for International Carriage by Air (the "Montreal Convention"). *Id.* Plaintiffs seek damages in the amount of one million dollars ($1,000,000.00). *Id.* In response, Delta moves to dismiss Plaintiffs' Amended Complaint on the grounds that Plaintiffs have failed to state a claim under the Montreal Convention [D.E. 17].

## II. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Although a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions." *Twombly*, 550

3

U.S. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

### III.   Analysis

#### A. Article 17 of the Montreal Convention

The Montreal Convention took effect in the United States on November 3, 2003, superseding the Warsaw Convention. *See Convention for the Unification of Certain Rules for International Carriage by Air*, art. 55, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 350 [hereinafter the "Montreal Convention"]; *see also Ugaz v. Am. Airlines, Inc.*, 576 F.Supp.2d 1354, 1360 (S.D. Fla. 2008). The Montreal Convention applies to "all international transportation of persons ... performed by aircraft for hire." Montreal Convention, art. 1(1). The Parties agree that the Montreal Convention controls this claim. (D.E. 17 at 1; D.E. 11 ¶ 35). "Because the Montreal Convention only recently came into force, it is appropriate to rely on cases interpreting the Warsaw Convention where the equivalent provision of the Montreal Convention is substantively the same." *Ugaz*, 576 F.Supp.2d at 1360 (citing *Paradis v. Ghana Airways Ltd.*, 348 F. Supp.2d 106, 111 (S.D.N.Y. 2004)).

Article 17 of the Montreal Convention governs physical injury claims, and provides that: "The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or

injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 17(1). The Convention[3] is the exclusive remedy for injuries suffered during the course of international air travel. *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 160-162 (1999) (abrogating *Abramson v. Japan Airlines Co., Ltd.*, 739 F.2d 130 (3rd Cir. 1984)). Recovery for personal injuries suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking," if not allowed under Article 17 of Montreal Convention, is not available at all. Montreal Convention, arts. 17, 24; *see Tseng*, 525 U.S. at 161.

For a carrier to have liability under Article 17 of the Convention, a plaintiff must establish that: (1) an "accident" occurred; (2) the accident caused death or bodily injury; and (3) the accident and injury must have occurred while embarking or disembarking or during the flight itself. *Campbell v. Air Jamaica, Ltd.*, 760 F.3d 1165, 1172 (11th Cir. 2014). The only issues presented here are whether an "accident" occurred within the meaning of the Convention, and whether an actual injury occurred.

## A. Plaintiffs Have Failed to Plead That an "Accident" Occurred on Board the Delta Flight

In order to recover under Article 17 of the Montreal Convention, a party must establish that an "accident" caused the injuries that form the basis of his claim. *See Air France v. Saks,* 470 U.S. 392, 396 (1985). The Supreme Court has defined an "accident" under Article 17 as "an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405. When the injury "indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the

---

[3] For purposes of this order the "Warsaw Convention" and the "Montreal Convention" are one and the same because no changes were made to Article 17—the controlling article—of the Warsaw Convention when it became the Montreal Convention. To preserve the accuracy of citations, the original treaty name is at times included.

5

aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." *Id.* at 406.  Moreover, "it is the *cause* of the injury that must satisfy the definition [of "accident"] rather than the occurrence of the injury alone." *Id.* at 399 (emphasis in original).

The incident at issue here arises from a dispute over the denial of Plaintiffs' request to upgrade to more comfortable – and more expensive – seats on the airplane [D.E. 11 ¶¶ 15-17].  Several courts have concluded upon similar facts that an argument over seating on an airplane is neither unexpected nor unusual, and therefore any claim arising from such a dispute does not qualify as an "accident" under Article 17.  *See, e.g., Grimes v. Northwest Airlines, Inc.*, No. CIV.A.98-CV-4794, 1999 WL 562244, at *3 (E.D. Pa. July 30, 1999), *aff'd*, 216 F.3d 1076 (3rd Cir. 2000), *cert. denied*, 531 U.S. 879 (2000); *Waters v. Port Auth. of N.Y. & N.J.*, 158 F.Supp.2d 415, 436-37 (D. N.J. 2001); *Dogbe v. Delta Air Lines, Inc.*, 969 F.Supp.2d 261, 271-72 (E.D.N.Y. 2013).  Similarly, courts have found that disputes regarding a passenger's request to depart from an aircraft, or a passenger's refusal to depart, also do not constitute "accidents" under the terms of the Convention.  *See Cush v. BWI Int'l Airways, Ltd.*, 175 F.Supp.2d 483, 488-89 (E.D.N.Y. 2001); *Brandt v. Am. Airlines*, No. C 98-2089 SI, 2000 WL 288393, at *7-8 (N.D. Cal. Mar. 13, 2000).  Relying on these cases, Defendant argues that the dispute between Plaintiffs and the airline employees regarding their refusal to allow Plaintiffs to upgrade to other seats is not an "accident" within the meaning of the Convention [D.E. 17 at 12-15].

In response to the motion, Plaintiffs fail to address any of the case law cited by Defendant, and instead argue that the Amended Complaint should survive dismissal

because there is "contradictory evidence" regarding the cause of Plaintiffs' injuries [D.E. 18 at 5 (citing *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1196-97 (3d Cir. 1978)]. The Court finds *DeMarines* inapposite. In *DeMarines*, the plaintiff alleged that he suffered a medical episode on board a commercial flight as a result of a mishap involving the pressurization of the aircraft. *DeMarines*, 580 F.2d at 1195. The defendant airline presented evidence that no such pressurization problem occurred. *Id.* at 1197. Thus, the case presented a factual dispute over the cause of the injury for the jury to consider. In this case, however, it is undisputed that the argument between Plaintiffs and the airline crew arose from Plaintiffs' rejected request for upgraded seats on the aircraft [D.E. 11 ¶¶ 16, 20]. Again, as previous courts have held, "an argument over seating is neither unexpected nor unusual." *Grimes*, 1999 WL 562244 at *3; *see also Waters*, 158 F.Supp.2d at 436 ("[A]ssignment of seats to passengers and disputes over them are commonplace and do not constitute an accident"). Therefore, the Court finds that Plaintiffs have failed to show that they suffered any injuries as a result of an "accident" as defined by Article 17 of the Montreal Convention, and Defendant's motion to dismiss is granted on these grounds.

### B. Plaintiffs Have Failed To Show They Suffered From Any Initial Or Subsequent Physical Injuries

As discussed above, a plaintiff bringing a claim under Article 17 must also show that the alleged accident resulted in death or bodily injury. *Campbell*, 760 F.3d at 1172. The Supreme Court has held that "bodily injury" under the Montreal Convention applies only to "physical injury, or physical manifestation of injury." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991). "Article 17 does not allow recovery for purely mental injuries." *Id.* at 534. Moreover, "physical manifestations of emotional and mental

7

distress do not satisfy the 'bodily injury' requirement in Article 17." *Carey v. United Airlines*, 255 F.3d 1044, 1051 (9th Cir. 2001).

In their Amended Complaint, Plaintiffs allege that their mistreatment from the flight crew and their subsequent detention in Ghana caused them to "fear for their safety, to be physically restrained, and to suffer severe emotional distress which manifested itself in subsequent physical ailments including nightmares, a heightened fear of flying, and generalized anxiety" [D.E. 11 ¶ 32]. Absent from the Amended Complaint are any allegations that Plaintiffs suffered any physical injuries. While Plaintiffs assert that they were "physically restrained," they do not allege that this restraint caused any physical injuries. *Id.* Without resulting physical injury, Plaintiffs' Complaint falls outside of the scope of the Montreal Convention.[4] The emotional distress and anxiety described in the Amended Complaint are merely the physical manifestations of emotional distress, which do not satisfy the bodily injury requirement of Article 17. *See Carey*, 255 F.3d at 1051. Thus, even if Plaintiffs had established that the incident on board their flight constituted an "accident" under Article 17, they have not alleged that they suffered physical bodily injury as required to bring a claim under Article 17. Because Plaintiffs have not claimed that they suffered any physical injuries, Plaintiffs have failed to state a claim upon which this Court may grant relief. *See Brandt*, 2000 WL 288393 at *8; *Floyd*, 499 U.S. at 552.

---

[4] Even with bodily injury, Plaintiffs would still be required to show a proximate causal connection between the "accident" and the injury. "[C]ourts apply proximate cause analysis in determining whether an unusual event is a 'link in the chain' that led to an 'accident' for purposes of the Warsaw Convention." *Cush v. BWI Int'l Airways, Ltd.*, 175 F. Supp. 2d 483, 487 (E.D.N.Y. 2001) (citing *Margrave v. British Airways*, 643 F.Supp. 510, 512 (S.D.N.Y.1986)).

## IV. Conclusion

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Defendant Delta Airlines' motion to dismiss the Amended Complaint [D.E. 17] is **GRANTED**. The Clerk is directed to CLOSE this case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 28 day of October, 2014.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of record